**OFFICE OF the BUDGET, Petitioner**

v.

**OFFICE OF OPEN RECORDS, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Dec. 7, 2010.
Decided Jan. 6, 2011.

Brian D. Zweiacher, Assistant Counsel, Harrisburg, for petitioner.

Barry L. Senseman, pro se, intervenor.

Audrey L. Buglione, Appeals Officer, Harrisburg, for respondent.

BEFORE: COHN JUBELIRER, Judge, and BUTLER, Judge, and QUIGLEY, Senior Judge.

OPINION BY Judge COHN JUBELIRER.

The Office of the Budget (Budget) petitions for review of the Final Determination of the Office of Open Records (OOR) that granted the Request of Barry L. Senseman (Requester) for copies of the payroll of Tolbert Masonry (Tolbert), a subcontractor on the Crispus Attucks Early Learning Center (Learning Center) project in the City of York, which received Redevelopment Assistance Capital Project (RACP) funds from Budget. The OOR concluded that, although the contract under which Tolbert received the RACP funds did not relate to the performance of a governmental function and, therefore, Section 506(d) of the Right to Know Law

(RTKL),[1] 65 P.S. § 67.506(d), was not implicated, the payroll records were under the "control" of Budget and are, therefore, subject to disclosure pursuant to Section 901 of the RTKL, 65 P.S. § 67.901. Budget argues that the OOR misinterprets the applicability of Section 901 and that payroll records of a private company, which are not related to a contract to perform a governmental function and are not in Budget's possession, are not under Budget's control and subject to disclosure merely because Budget has a legal right to audit those records.

On January 7, 2010, Budget received the Request from Requester. In the Request, Requester sought "Copies of Weekly Payroll Certification for Public Works Project for Contractor and/or Subcontract Tolbert Mas[o]nry performing work on ... Learning Center." (Request at 1, R.R. at 1.) Requester asserted that Section 506(d) applied to his Request because the RACP Grant Agreement and contracts between the parties to the project implicated the Pennsylvania Prevailing Wage Act (PWA).[2] Budget issued its Final Response to the Request on February 12, 2010. Budget rejected the Request on the grounds that the requested records were not in its possession and that it was not obligated to obtain the records pursuant to Section 506(d) because RACP grant agreements are not contracts relating to governmental functions and, therefore, Budget does not have the obligation to obtain, for disclosure, contractors' certified payroll records created pursuant to such grant agreements.[3] Along with its Final Re-

---

1. Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101–67.3104.

2. Act of August 15, 1961, P.L. 987, *as amended*, 43 P.S. §§ 165-1–165-17.

3. In concluding that RACP grant agreements are not contracts relating to a government

function, Budget conducted analyses pursuant to both: (1) the governmental function test articulated by the Pennsylvania Supreme Court in *Morris v. Mount Lebanon Township School District,* 393 Pa. 633, 637–38, 144 A.2d 737, 739 (1958), *overruled on other grounds, Ayala v. Philadelphia Board of Education,* 453

sponse, Budget included the RACP Grant Agreement between Budget and the City of York and the Affidavit of Elias D. Joseph (Affidavit), Senior Assistant Director of Budget's Bureau of Revenue, Capital and Debt.

Requester appealed to the OOR, arguing that he previously had received similar records regarding other contractors without any assertion by Budget that such records were not public records and that Budget, in its Final Response:

> eroded [sic] in their determination and/or application of:
>
> a. Possession (agency possession).
> b. Governmental function.
> c. Prevailing Wage Act.

(Requester Appeal ¶ 8, March 4, 2010, R.R. at 59.) On March 31, 2010, the OOR issued its Final Determination.[4] In its Final Determination, the OOR agreed with Budget that the RACP Grant Agreement was not a contract relating to a gov-

ernmental function and that the payroll records were, therefore, not subject to disclosure pursuant to Section 506(d). Nevertheless, the OOR determined, pursuant to Section 901 of the RTKL and this Court's decision in *Lukes v. Department of Public Welfare*, 976 A.2d 609 (Pa. Cmwlth.) (interpreting the former Right to Know Act (Prior Law)[5]), *appeal denied*, 604 Pa. 708, 987 A.2d 162 (2009), that an agency must disclose not only records that are in the agency's possession, but also those that are in the agency's custody or control. The OOR reasoned that, because Budget has the authority and duty under the RACP Grant Agreement to ensure that subcontractors comply with the PWA, Budget has custody and control over Tolbert's certified payroll records such that Budget must obtain and then disclose these records pursuant to Section 901. The OOR, therefore, granted Requester's appeal. Budget now petitions this Court for Review.[6]

---

Pa. 584, 587 n. 3, 305 A.2d 877, 878 n. 3 (1973), and applied by this Court in *Beaver Dam Outdoors Club v. Hazleton City Authority*, 944 A.2d 97 (Pa.Cmwlth.2008); and (2) the governmental function test articulated by the Court of Common Pleas of Lackawanna County in *SWB Yankees LLC v. Wintermantel*, 37 Media L. Rep. 2455 (Pa. C.C.P. Lackawanna Cnty.2009), *aff'd*, 999 A.2d 672 (Pa. Cmwlth.2010).

4. In considering Requester's Appeal, the OOR apparently considered supplementary documentation supplied by Requester and Budget to the OOR, but not included by the OOR in the certified record to this Court, including: "a letter from [Budget] to Mayor Brenner of York regarding the monitoring of the grant and Agreement for compliance with requirements of the RACP program"; "a Memorandum of Law regarding [Budget's] access to the certified payrolls"; and "an affidavit of Kathy Kyle, who is responsible for day-to-day management for the RACP program, including [Budget's] records for the program." (Final Determination at 3, R.R. at 63.) While it does not appear that the OOR's Final Deter-

mination relied heavily upon this evidence (although the Final Determination does cite this evidence in its legal analysis), the parties rely on this evidence in their briefs to this Court, or this evidence is necessary for this Court to reach its decision in this case, we remind the OOR that the record it certifies to this Court should "include evidence and documents admitted into evidence by the appeals officer." *Department of Transportation v. Office of Open Records*, 7 A.3d 329, 333 (Pa. Cmwlth.2010).

5. Act of June 21, 1957, P.L. 390, *as amended, formerly* 65 P.S. §§ 66.1–66.9 *repealed by* Section 3102(2)(ii) of the RTKL, 65 P.S. § 67.3102(2)(ii).

6. In *Department of Transportation v. Office of Open Records*, 7 A.3d 329 (Pa.Cmwlth.2010), this Court noted that:

> In reviewing a final determination of the OOR, this Court "independently reviews the OOR's orders and may substitute its own findings of fact for that of the agency." With regard to what evidence this Court may consider in reviewing a decision of the

■ Section 301 of the RTKL requires that an agency provide public records in accordance with the RTKL. 65 P.S. § 67.301. Section 102 of the RTKL defines "public record" as:

A record, including a financial record, *of a Commonwealth or local agency* that:

(1) is not exempt under section 708;

(2) is not exempt from being disclosed under any other Federal or State law or regulation or judicial order or decree; or

(3) is not protected by a privilege.

65 P.S. § 67.102 (emphasis added). Therefore, in order to be a *public* record, a record must be "of" a Commonwealth or local agency. Section 305(a) provides that "[a] record *in the possession of* a Commonwealth agency or local agency shall be presumed to be a public record." 65 P.S. § 67.305(a). Therefore, records *not* in the possession of an agency would not be presumed to be public records. Section 506(d) provides an exception to this general proposition and gives an example of a public record that is "of" an agency, even where it is not in the agency's possession:

[a] public record that is not in the possession of an agency but is in the possession of a party with whom the agency has contracted to perform *a governmental function* on behalf of the agency, and which directly relates to the governmental function and is not exempt under this act, shall be considered a public record of the agency for purposes of this act.

65 P.S. § 67.506(d)(1) (emphasis added). As noted above, neither the OOR nor the Requester argue that the Grant Agreement is a contract to perform a governmental function on behalf of Budget such that the requested payroll records are public records under Section 506(d)(1). Therefore, the issue of whether the payroll records would be disclosable pursuant to this Section is not before this Court.[7]

■ The plain language of Section 901 does not define any records as public records that must be disclosed. Rather, Section 901 states, in relevant part:

Upon receipt of a written request for access to a record, an agency shall make a good faith effort *to determine if* the record requested is a public record, legislative record or financial record and *whether* the agency has possession, custody or control of the identified record, and *to respond* as promptly as possible under the circumstances existing at the time of the request.

65 P.S. § 67.901 (emphasis added). This Court is bound to interpret statutes according to their plain language and, "[w]hen the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S. § 1921(b). By its plain language, Section

OOR, this Court "is entitled to the broadest scope of review" but "should consider the manner of proceeding most consistent with justice, fairness and expeditious resolution." The RTKL does not prohibit this Court from considering evidence that was not before the OOR. *Id.* at 332 n. 2 (citations omitted) (quoting *Bowling v. Office of Open Records,* 990 A.2d 813, 818, 820, 823 (Pa.Cmwlth.2010) (en banc)).

7. The most likely reason that the OOR does not raise the issue of the applicability of Sec-

tion 506(d) before this Court is that, in *Senseman v. City of York,* OOR Docket No. AP 2009–0762, October 30, 2009, the OOR denied Requester's request for the same records at issue in this case from the City of York on the grounds that the purpose of the Learning Center is to "provide services and activities for City youth, including childcare," and that these are not governmental functions. *Id.* at 4, 8. There has been no appeal from that decision.

901 describes the actions that an agency is obligated to take when it receives a request for a record; it does not define what records are subject to disclosure under the RTKL. Pursuant to Section 901, the agency must: first, make a good faith effort to ascertain if the requested record is a public, legislative or financial record; second, determine whether the agency has possession, custody, or control of the record; and third, respond promptly.

The OOR argues that Sections 305 and 901 must be read together and that such a reading creates a presumption that records in an agency's custody or control, not merely in its possession, are public records. However, if Section 901 were read to render records within the custody or control of agencies presumptively public records pursuant to Section 305, Section 506(d) would become mere surplusage, a result that is not countenanced by the rules of statutory construction. 1 Pa.C.S. § 1921(a) ("Every statute shall be construed, if possible, to give effect to all its provisions.") Moreover, the fact that the Legislature chose to use the terms "custody" and "control" in Section 901, but chose *not* to include these terms in Section 305 must be recognized in our analysis. Had the Legislature wanted to create the presumption that records in an agency's custody and control, but not in its possession, were public records, it would have included those terms in Section 305, as it did in Section 901, but it did not.

The OOR also relies upon *Lukes* in support of its position, arguing that *Lukes* supports the principle that an agency must disclose not only records in its possession, but also records within its control. *Lukes* is inapposite to the current case. *Lukes* was decided under the Prior Law and turned on the question of what the term "maintained" meant in the definition of "record" under Section 1 of the Prior Law, which defined "record" as "[a]ny document *maintained by an agency,* in any form, whether public or not." *Lukes,* 976 A.2d at 616 (quoting Section 1 of the Prior Law, formerly at 65 P.S. § 66.1) (emphasis in original).[8] Concluding that the term "maintained" was ambiguous as used in this definition, this Court turned to various factors provided by 1 Pa.C.S. § 1921(c), including the purpose of the Prior Law, and concluded that "maintained" could mean not only physical possession, but also custody or control. *Lukes,* 976 A.2d at 616–21. In doing so, this Court articulated an important public policy concern:

If this Court were to conclude that only documents within an agency's actual physical possession were subject to disclosure, we believe that public records could be shielded from disclosure by placing them in the hands of third parties. We do not believe the General Assembly intended to provide a loophole for agencies to conceal otherwise public records from public view. Despite our preference for a bright-line rule that actual possession would provide, such a result is not in the public's interest and is at odds with the purpose of the Law.

*Id.* at 618.

Unlike the records in *Lukes,* which related to the governmental function of the Department of Public Welfare (DPW), *Id.* at 623 (holding that the private entity under contract in possession of the records at issue was acting as an agent of the DPW in administering a DPW program), there is no argument raised here that the records in this case relate to Budget's governmental function. There is no evidence that

---

8. We note that, in contrast, the RTKL does not use the word "maintained" in its defini-tion of the term "public record."

Budget is attempting to shield the requested payroll records from disclosure. Similarly, while Budget has the right to audit these payroll records, there is no evidence that they have ever been in Budget's possession or that Budget is attempting to play some sort of shell game by shifting these records to a non-governmental body. Moreover, unlike in *Lukes,* this Court is not free to consider factors beyond the statutory language because the current RTKL is not ambiguous on this point, as discussed above. To adopt the OOR's reasoning would mean that records of a private company, not in the possession of a government agency and not related to a contract to perform a governmental function, are disclosable to the public if any government agency has a legal right to review those records. Such interpretation would greatly broaden the scope of the RTKL beyond its explicit language.

The OOR also cites this Court's recent decision in *Department of Conservation and Natural Resources v. Office of Open Records,* 1 A.3d 929 (Pa.Cmwlth.2010) (*DCNR*), for the principle that certified payroll records, such as the ones at issue in this case, are disclosable public records. We do not believe *DCNR* is applicable to the facts of this case. In *DCNR,* the certified payroll records were in the agencies' possession. *Id.* at 936 ("Here, we are dealing with 'records' that are documents-certified payroll records *submitted to the Agencies* by third-party contractors." (emphasis added)). The issue in *DCNR* was not whether such records were disclosable when they were not in an agency's possession, but whether the records in the agency's possession could be disclosed when they contained personal financial information, and, if so, whether the agency had the authority to redact that information. *Id.* at 935. *DCNR* did not hold that certified payroll records that do not relate to a contract to perform a governmental func-

tion and that are not in an agency's possession, such as those at issue here, are public records subject to disclosure.

For these reasons we reverse the order of the OOR.

### *ORDER*

**NOW,** January 6, 2011, the Order of the Office of Open Records in the above-captioned matter is hereby **REVERSED.**