IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Pennsylvania Housing Finance Agency, | : | |
| Petitioner | : | |
| | : | |
| v. | : | |
| | : | |
| Debra Cruel and Cruel and Associates, LLC (Office of Open Records), | : | No. 278 C.D. 2025 |
| Respondents | : | Submitted: April 13, 2026 |


BEFORE:   HONORABLE ANNE E. COVEY, Judge
                 HONORABLE LORI A. DUMAS, Judge
                 HONORABLE STELLA M. TSAI, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                                                    FILED:  May 28, 2026


The Pennsylvania Housing Finance Agency (PHFA) petitions this Court for review of the Office of Open Records' (OOR) February 5, 2025 Final Determination (Final Determination) granting Debra Cruel's (Requester) and Cruel and Associates, LLC's (collectively, Respondents) appeal from the PHFA's denial of Requester's request for records pursuant to the Right-to-Know Law (RTKL)[1] (Request).[2]  Essentially, the PHFA presents one issue for this Court's review: whether the Request was sufficiently specific under Section 703 of the RTKL, 65 P.S. § 67.703.[3]  After review, this Court affirms.

_____

[1] Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101-67.3104.

[2] It is unclear how Cruel and Associates, LLC became a party to this appeal, as Requester alone submitted the Request to the PHFA.  The OOR captioned its Final Determination naming both Respondents and the parties did the same in the instant appeal.

[3] In their Statement of Questions Involved, Respondents present three issues for this Court's review: (1) whether an RTKL request is sufficiently specific under Section 703 of the

On September 25, 2024, Requester submitted the Request to the PHFA, which stated:

> I am requesting documents related to purchasing the former MaClay Street Apartments Phase I and II, now known as Governor's Square Apartments and Towns [(Properties)]. The [P]roperties are at 501 MaClay Street and 208 N[.] 5th Street in Harrisburg, [Pennsylvania]. Uptown Partners, LP, [Uptown Partners] and Landex of MD, GP, own them. The [United States (U.S.) Department of Housing and Urban Development (HUD)] Upfront Grant numbers are UPG03PA01325G and UPG03PA02326. The [p]roject numbers are 034-35175 and 034-35211. The [P]roperties were sold to the Harrisburg Redevelopment Authority on June 17, 2003, and purchased by Uptown Partners on February 18, 2004. Uptown Partners filed for bankruptcy in [the] P[ennsylvania] Middle District Bankruptcy Court [(Bankruptcy Court)], and the [P]roperties are being offered for sale as a part of that bankruptcy proceeding.
>
> The next [Bankruptcy] Court hearing is November 5, 2024. [Requester] ask[s] for expedited processing to complete [her] purchase offer. The [P]roperties must be repaired urgently, as the conditions impact the tenants' safety and well-being. [Requester] hereby request[s] a copy of the entire file, including but not limited to the below-referenced info[rmation.]

Reproduced Record (R.R.) at 3a. Thereafter, the Request set forth 45 paragraphs containing 44 separate items (Request Items).[4] *See* R.R. at 3a-5a.

---

RTKL when it includes no date range, covers decades of potential records, seeks the entire file, and is ambiguous concerning the agency transaction or activity for which records are requested; (2) whether the act of interpreting an RTKL request to have an implied, albeit, very lengthy, finite timeframe, is an impermissible modification or expansion of the request on appeal; and (3) whether an RTKL request for a Commonwealth agency record under Section 102 of the RTKL, 65 P.S. § 67.102, is an agency record when the documents requested do not describe the agency's transactions or activities, but instead those of third parties not under the agency's jurisdiction or control. *See* PHFA Br. at 4. PHFA's issues are subsumed in the issue as stated by this Court and will be addressed accordingly.

[4] Request Paragraph 45 was a summary of the items sought.

On November 1, 2024, after invoking a 30-day extension to respond, *see* Section 902(b)(2) of the RTKL, 65 P.S. § 67.902(b)(2), the PHFA denied the Request, asserting that it was insufficiently specific under Section 703 of the RTKL. In addition, the PHFA directed Requester to contact governmental creditors participating in the bankruptcy process to obtain many of the requested records because the PHFA did not provide financing or a grant for the subject project. On November 25, 2024, Respondents appealed to the OOR, challenging the denial and stating grounds for disclosure. The OOR invited both parties to supplement the record and directed the PHFA to notify any directly interested third parties of their ability to participate in the appeal. *See* Section 1101(c) of the RTKL, 65 P.S. § 67.1101(c).

On December 18, 2024, the PHFA submitted a position statement reiterating its grounds for denial. The PHFA argued, *inter alia*, that the Request was insufficiently specific and that a majority of the requested records were not PHFA records. In support thereof, the PHFA submitted declarations of its Agency Open Records Officer (AORO), Christopher Anderson (AORO Anderson) (Anderson Attestation), and its Technical Services Representative, Ralph Shires (Shires) (Shires Attestation).[5] On December 19, 2024, Respondents filed two copies of a position statement, therein asserting, among other things, that the Request was sufficiently specific and sought *records* as that term is defined in Section 102 of the RTKL, 65 P.S. § 67.102. In addition, Respondents asked to amend the Request in light of the PHFA's acknowledgement of its role in issuing tax credits for the Properties pursuant to the Low-Income Housing Tax Credit (LIHTC) Program.

On January 2, 2025, the PHFA submitted correspondence to the OOR, declaring, *inter alia*, that the instant appeal was untimely. The PHFA also offered a

---

[5] The Anderson and Shires Attestations were made subject to the penalties for unsworn falsifications to authorities. *See* Section 4904 of the Crimes Code, 18 Pa.C.S. § 4904.

second declaration of AORO Anderson, who attested that the Respondents acknowledged that November 22, 2024, was the final day for Respondents to file an appeal. On January 7, 2025, Respondents filed correspondence contending that their appeal was timely filed on November 25, 2024. On February 5, 2025, the OOR granted Respondents' appeal and directed the PHFA to conduct a search and provide to Respondents all records responsive to the Request within 30 days, or, in the alternative, a sworn affidavit or statement made under the penalty of perjury demonstrating that the records do not exist. The PHFA appealed to this Court.[6, 7]

Initially,

[u]nder the RTKL, records in a government agency's possession are presumed to be public records, accessible for inspection and copying by anyone requesting them, and must be made available to a requester unless they fall within specific, enumerated exceptions or are privileged. *Off. of the Dist. Att'y v. Bagwell*, 155 A.3d 1119, 1129 (Pa. Cmwlth. 2017). Because of this presumption, the agency has the burden of proving by a preponderance of the evidence that a record is exempt or privileged. *Am. Civ.*

---

[6] In appeals from final determinations of the OOR regarding RTKL requests submitted to Commonwealth agencies, this Court is the ultimate fact[-]finder, and [it] exercise[s] a *de novo* standard of review. Section 1301 of the RTKL, 65 P.S. § 67.1301. [This Court] accordingly do[es] not afford deference to the OOR's fact[-]finding or conclusions of law and may substitute [its] own in whole or in part. *Bowling v. Off[.] of Open Rec[s.], . . .* 75 A.3d 453, 474 ([Pa.] 2013); *W[.] Chester Univ[.] of [Pa.] v. Browne*, 71 A.3d 1064, 1067 n.4 (Pa. Cmwlth. 2013). [This Court] further exercise[s] the broadest scope of review over all justiciable issues raised and preserved below. *Bowling*, 75 A.3d at 477; *Payne v. [Pa.] Dep['t] of Health*, 240 A.3d 221, 225 n.6 (Pa. Cmwlth. 2020). In the event that [it's] review requires further supplementation of the record, [this Court] may conduct a hearing or remand for the OOR to do so. *W[.] Chester Univ[.]*, 71 A.3d at 1067 n.4.

*Se. Pa. Transp. Auth. v. Anderson*, 337 A.3d 575, 584 n.4 (Pa. Cmwlth. 2025).

[7] On April 17, 2026, Respondents filed an Application for Leave to file a Supplemental Brief.

4

> *Liberties Union v. Pa. State Police*, . . . 232 A.3d 654, 658
> ([Pa.] 2020) (citing Section 708(a)(1) of the RTKL, 65
> P.S. § 67.708(a)(1)).  A preponderance of the evidence is
> such evidence as would lead a fact[-]finder to find that the
> existence of a contested fact is more probable than the
> nonexistence of the contested fact.  *Bagwell*, 155 A.3d at
> 1130.  The question of whether a record or document is
> exempt from disclosure is, thus, a factual one.  *Bowling v.*
> *Off. of Open Recs.*, . . . 75 A.3d 453, 476 ([Pa.] 2013).

*Posey v. Dep't of Corr.*, 329 A.3d 864, 869 (Pa. Cmwlth. 2025).

The PHFA argues that the Request seeks *the entire file*, identifying various categories of documents concerning at least one, but potentially five or more, transactions without identifying a finite period of time for which the records were requested.  The PHFA contends that by interpreting the Request to contain an implied timeline, the OOR erred as to a finding of fact concerning the timeline, and as a matter of law regarding the Request's specificity.  The PHFA further asserts that, under existing precedent, the OOR is not permitted to modify or expand an RTKL request on appeal.  The PHFA insists that because the Request did not include a timeline, the OOR's interpretation that the Request had an implied, albeit very lengthy, finite timeframe was an impermissible modification, creating a timeline not reasonably discernable from the Request.

The PHFA further emphasizes that the Request included an extensive list of different document types, including those created and maintained by third parties named in the Request.  The PHFA claims that because the Request sought documents of transactions or activities of those third parties, not all of the documents the Request sought are PHFA records and, therefore, are not subject to access under the RTKL unless the PHFA has possession or control of them.

Respondents rejoin that the OOR correctly determined that the Request was sufficiently specific, as it identified a clear subject matter (the Properties, with specific addresses, grant numbers, and project numbers), a defined scope (44 discrete

categories of records, including redevelopment contracts, inspection reports, correspondence, and financial documents), and a reasonable timeframe (from June 17, 2003, to the present), thereby satisfying the three-prong test under *Pennsylvania Department of Education v. Pittsburgh Post-Gazette*, 119 A.3d 1121 (Pa. Cmwlth. 2015). Respondents further retort that the requested documents qualify as records under Section 102 of the RTKL, as they document the PHFA's transactions or activities and/or the PFHA created, received, or retained them in connection with such transactions or activities. Respondents also assert that the PHFA's appeal is frivolous and filed in bad faith, as evidenced by its failure to comply with the OOR's order, improper submission of over 400 pages of new materials not presented below, and refusal to conduct a good-faith search or review, thereby warranting an award of reasonable attorney's fees, litigation costs, and civil penalties under Sections 1304 and 1305 of the RTKL, 65 P.S. §§ 67.1304-1305, in Respondents' favor.

Section 102 of the RTKL defines a *record* as:

> **Information**, regardless of physical form or characteristics, **that documents a transaction or activity of an agency and that is** created, **received**[,] **or retained pursuant to law or in connection with a transaction**, **business**[,] **or activity of the agency**. The term includes a document, paper, letter, map, book, tape, photograph, film or sound recording, information stored or maintained electronically[,] and a data-processed or image-processed document.

65 P.S. § 67.102 (emphasis added). The fact that many of the Request Items seek records that appear to relate to transactions or activities of a lender or HUD, does not mean that they are not PHFA records under the RTKL. If the PHFA received and/or retained the Request Items in connection with the PHFA's involvement in allocating tax credits for the Properties under the LIHTC Program, then they are records *of the PHFA* under the RTKL.

6

Further, Section 703 of the RTKL provides, in relevant part: "A written request should identify or describe the records sought with **sufficient specificity** to enable the agency to ascertain which records are being requested . . . ." 65 P.S. § 67.703 (emphasis added). To determine whether a request is sufficiently specific, the *Pittsburgh Post-Gazette* Court established a three-prong test "examining the extent to which the request sets forth[:] (1) the subject matter of the request; (2) the scope of documents sought; and (3) the timeframe for which records are sought." *Id*. at 1124.

This Court expounded:

> *Pittsburgh Post-Gazette* sets forth a useful framework in that it provides us a vocabulary as to three specific features of requests [this Court] may need to consider in determining whether a request is sufficiently specific under Section 703 [of the RTKL]. However, ***Pittsburgh Post-Gazette* did not set forth a conjunctive, bright-line rule requiring each** "**element**" **of the test to be satisfied**; rather, it set forth a flexible approach, consistent with the cases it summarized. *Bagwell* underscored the flexibility of the test, and the post-*Pittsburgh Post-Gazette* vitality of [*Montgomery County v.*] *Iverson*[, 50 A.3d 281 (Pa. Cmwlth. 2012)], noting that "although *Iverson* was decided prior to this Court's clear recitation of the sufficiently specific test in *Pittsburgh Post-Gazette*, the reasoning in *Iverson* highlights the flexible, case[-]by[-]case, contextual application of the test." *Bagwell*, 155 A.3d at 1144-45 . . . . Indeed, [this Court] agree[s] that "[t]here is no bright-line rule absolutely requiring a requester to precisely identify the subject matter of the requested record. The absence of a stated subject matter is but one factor to consider[.]" *Methacton* [*Sch. Dist. v. Off. of Open Recs.* (Pa. Cmwlth. No. 250 C.D. 2021, filed Dec. 28, 2021)[8]], slip op. at 3-4.

---

[8] An unreported panel decision of this Court, "issued after January 15, 2008," may be cited "for its persuasive value[.]" Section 414(a) of the Commonwealth Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a).

*Pa. Off. of the Governor v. Brelje*, 312 A.3d 928, 937 (Pa. Cmwlth. 2024) (emphasis added; footnote omitted).

Here, although the 44 Request Items do not identify timeframes, the Request expressly states: "The [P]roperties were **sold** to the Harrisburg Redevelopment Authority **on June 17**, **2003**, and **purchased** by Uptown Partners **on February 18**, **2004**." R.R. at 3a (emphasis added). Further, Request paragraph 45 specifies:

> In short, this [R]equest should include the original designation as affordable housing, sale to Uptown Partners, all [P]roperty rehab plans, environmental studies, financing details, rehab details, purchase and sale agreements, new construction details, [P]roperty compliance inspections, maintenance records, code violations, communications associated with the bankruptcy proceedings, documented resident complaints, upfront grant agreements, bonds and bond exercise records, letters of credit[], use of funds records, draw records, payment records, grant balance, loan payments due, audited (G[enerally] A[ccepted] A[ccounting] P[rinciples]) accounting records, annual reports, site visits and audits, updated data related to occupancy, program evaluations, and homes sold. Please include any and all communications discussing HUD and [the] PHFA's desired outcomes related to the bankruptcy sale.

R.R. at 5a. Given the listed dates and summary, the Request clearly sets forth the parameters for the Requested Items.

> In addition,
>
> the OOR did not, as [the PHFA] suggests, modify, narrow, or refashion the Request to make it sufficiently specific. Instead, the OOR balanced the three *Pittsburgh Post-Gazette* factors and determined that [the PHFA] need only search for the specific categories of records . . . between specifically identified [dates] . . . . The OOR did not supply any additional qualifications or limiting language,

8

but rather interpreted the [Request] Items in context. The OOR's Final Determination in this respect was appropriate and supported by the record.

*Se. Pa. Transp. Auth. v. Anderson*, 337 A.3d 575, 590 (Pa. Cmwlth. 2025).

Moreover, "[t]he size of the request is not dispositive of specificity under Section 703 of the RTKL[,]" and "the fact that a request is burdensome does not in itself render the request not specific." *Greim v. Pa. State Police*, 329 A.3d 873, 882 (Pa. Cmwlth. 2025). The OOR concluded: "Although the Request does include a lengthy implied timeframe of over [20] years, when read as a whole, it sufficiently identifies a subject matter and scope(s) that enable the PHFA to ascertain which records are being requested." Final Det. at 12. This Court discerns no error in the OOR's conclusion.

Regarding Respondents' argument that this appeal is frivolous and the PHFA filed it in bad faith and, thus, Respondents are entitled to attorney's fees, costs, and penalties, the PHFA rejoins that the record and the PHFA's brief demonstrate that the PHFA acted in good faith throughout this process. Specifically, the PHFA insists it acted in good faith by: (1) first providing Requester with an opportunity to revise the Request; (2) before the OOR, claiming contradictions and ambiguities, indefinite timeframe, and third-party documents not in its possession as reasons Requester should revise the Request; and (3) in the PHFA's brief, supplementing those good faith arguments with public records, freely available from the Dauphin County Recorder of Deeds, to provide context in which to evaluate the Request's specificity. The PHFA maintains that the opportunity remains for Requester to submit a more specific request.

Section 1304 of the RTKL provides:

**(a) Reversal of agency determination.--**If a court reverses the final determination of the appeals officer or grants access to a record after a request for access was deemed denied, the court may award reasonable attorney

9

fees and costs of litigation or an appropriate portion thereof to a requester if the court finds either of the following:

(1) the agency receiving the original request willfully or with wanton disregard deprived the requester of access to a public record subject to access or otherwise acted in bad faith under the provisions of th[e RTKL]; or

(2) the exemptions, exclusions[,] or defenses asserted by the agency in its final determination were not based on a reasonable interpretation of law.

**(b) Sanctions for frivolous requests or appeals.**--The court may award reasonable attorney fees and costs of litigation or an appropriate portion thereof to an agency or the requester if the court finds that the legal challenge under this chapter was frivolous.

**(c) Other sanctions.**--Nothing in th[e RTKL] shall prohibit a court from imposing penalties and costs in accordance with applicable rules of court.

65 P.S. § 67.1304.

Section 1305 of the RTKL states:

**(a) Denial of access.**--A court may impose a civil penalty of not more than $1,500[.00] if an agency denied access to a public record in bad faith.

**(b) Failure to comply with court order.**--An agency or public official who does not promptly comply with a court order under this act is subject to a civil penalty of not more than $500[.00] per day until the public records are provided.

65 P.S. § 67.1305.

This Court has explained:

Before imposing costs, fees, or penalties under either Section 1304 [of the RTKL] or Section 1305 [of the RTKL], [this Court] must make findings of fact that an agency has acted in bad faith. [*Bagwell*], 155 A.3d [at]

10

1140 . . . . **Bad faith includes an agency's failure to conduct a good faith search for responsive records to a request and determine whether they are public**. *Id*. at 1140-41; *Uniontown Newspapers*[*, Inc. v. Pa. Dep't of Corr.*, 243 A.3d 19, 34 (Pa. 2020)]. It also includes **a failure to comply with a final determination of the OOR**. *Bagwell*, 155 A.3d at 1141. By way of example, in *Bagwell*, [this Court] found bad faith where a district attorney's office[:] (1) based its request denial on the identity of the requester and the presumed intended use of the records; (2) failed to cite any legal authority in support of its denial; (3) did not make a good faith search for the requested records; and (4) misrepresented binding RTKL precedent and the state of the law throughout the proceedings. *Id*. at 1142.

*Anderson*, 337 A.3d at 597-98 (emphasis added).

In *Anderson*,

although the OOR granted [the r]equester's appeal, in part, regarding [the Southeastern Pennsylvania Transportation Authority's (]SEPTA[)] blanket denial on specificity grounds, the OOR did conclude that portions of the 20-[i]tem [r]equest were insufficiently specific, a conclusion that is not challenged in this Court. Further, SEPTA included detailed legal argument in its initial denial, [its] position statement before the OOR, and [its] brief to this Court. SEPTA also has manifested throughout these proceedings a willingness to resolve this matter amicably. As part of that process, SEPTA has attempted to search for and identify responsive records and log possible exemptions to disclosure. It also has made a colorable, rational argument identifying the difficulty in simultaneously asserting a blanket specificity objection and arguing for the applicability of Section 708 [of the RTKL] exemptions[, 65 P.S. § 67.708]. Although [this Court] ultimately reject[s] that argument, it is not so bereft of merit to indicate bad faith on SEPTA's part[,] either in conducting its initial search or litigating the appeals before the OOR and this Court. [This Court] therefore will not find that SEPTA has acted in bad faith, and [this Court] accordingly den[ies] [the r]equester's requests for an award of attorney['s] fees and the imposition of civil penalties.

11

*Id*. at 598.

> Here, in its original denial, the PHFA stated, in relevant part:

> As th[e] [R]equest is expansive, seeking the entire file rather than a type of record or recipient, and does not limit its scope to a finite time, it is denied for insufficient specificity. *See id*.

> Please note: the [PHFA] allocated low-income housing tax credits to Uptown Partners[], but has not provided it with financing or a grant. Many of the items identified as within the scope of the [R]equest appear to be records that would be maintained by a lender or grant provider. As PHFA is not a lender to th[e subject] project, [it] encourage[s] [Requester] to contact any governmental creditors participating in the bankruptcy process, as they are more likely to possess the records you seek.

R.R. at 13a. Further, before the OOR, the PHFA provided legal argument, *see* R.R. at 17a-18a, the Anderson Attestation, *see* R.R. at 27a-29a, and the Shires Attestation, *see* R.R. at 31a-33a, supporting its position that the Request was insufficiently specific and that the Request Items were not records under the RTKL. In addition, the PHFA included a copy of an email it sent to Requester recommending that she contact "[Shires who] is a technical services representative at PHFA [who] is familiar with any records [it] might have related to th[e subject] development. He and the tech services team will be able to work with and help assist you directly."

R.R. at 35a. Accordingly, as in *Anderson*, here, this Court holds that

> although the OOR granted Requester's appeal . . . regarding the [PHFA's] blanket denial on specificity grounds . . . [the PHFA] included detailed legal argument in its initial denial, [its] position statement before the OOR, and [its] brief to this Court. [The PHFA] also has manifested throughout these proceedings a willingness to resolve this matter amicably. As part of that process, [the PHFA has offered information to help narrow the search and offered Shires help to aid Requester in obtaining the records she is seeking]. It also has made a colorable,

rational argument [before the OOR and this Court]. Although [this Court] ultimately reject[s] that argument, it is not so bereft of merit to indicate bad faith on [the PHFA's] part either in conducting its initial search or litigating the appeals before the OOR and this Court. [This Court] therefore will not find that [the PHFA] has acted in bad faith, and [this Court] accordingly den[ies] Requester's requests for an award of attorney['s] fees and the imposition of civil penalties.

*Anderson*, 337 A.3d at 598.

For all of the above reasons, the OOR's Final Determination is affirmed.

_____
ANNE E. COVEY, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Pennsylvania Housing Finance Agency,  :
                    Petitioner  :
                               :
            v.  :
                               :
Debra Cruel and Cruel and Associates, LLC (Office of Open Records),  :  No. 278 C.D. 2025
                    Respondents  :

## O R D E R

AND NOW, this 28th day of May, 2026, the Office of Open Records' February 5, 2025 Final Determination is AFFIRMED. Debra Cruel's and Cruel and Associates, LLC's Application for Leave to File a Supplemental Brief is DENIED as moot.

_____
ANNE E. COVEY, Judge